Approved: _____
ADAM S. HOBSON
Assistant United States Attorney

Before:   THE HONORABLE DEBRA FREEMAN
          United States Magistrate Judge
          Southern District of New York

19MAG 2148

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :   **COMPLAINT**

          - v. -                    :   Violation of
                                        18 U.S.C. § 922(g)(1)
ESTALIN BATISTA,                    :
                                        COUNTY OF OFFENSE:
                    Defendant.      :   NEW YORK

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   CHRISTOPHER CRUZ, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

COUNT ONE

   1. On or about March 2, 2019, in the Southern District of New York, ESTALIN BATISTA, the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce, a firearm, to wit, a Phoenix Arms .22 caliber semi-automatic pistol, which previously had been shipped and transported in interstate and foreign commerce.

   (Title 18, United States Code, Section 922(g)(1).)

   The bases for my knowledge and for the foregoing charges are, in part, as follows:

   2. I am a Detective with the NYPD and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my conversations with law enforcement agents, witnesses and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not

include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. Based on my participation in the arrest of ESTALIN BATISTA, the defendant, and my conversations with an NYPD detective ("Detective-1") and two NYPD officers ("Officer-1" and "Officer-2") also involved in the arrest of BATISTA, I have learned, among other things, the following:

a. On or about March 2, 2017, at approximately 5:15 p.m., Detective-1 and I were on patrol in the vicinity of 161st Street and Broadway in New York, New York when we observed an individual ("Individual-1") standing on the street corner. We then observed a BMW (the "Vehicle") pull up next to Individual-1. Another individual ("Individual-2") exited the Vehicle from the driver's side door and began talking to Individual-1.

b. A short time later, two other men, including a man later identified as BATISTA, approached Individual-1 and Individual-2. A short time after that, Individual-1 and Individual-2 (i.e., the original driver of the Vehicle) left on foot. BATISTA entered the front passenger seat of the Vehicle and the second man (the "Driver") entered the driver's seat. The Vehicle then drove away in the direction Individual-1 and Individual-2 had walked.

c. Detective-1 and I then drove to a location on 160th Street where we observed the Vehicle double-parked in front of a building. A few minutes later, the Vehicle again drove away.

d. Detective-1 called Officer-1, who was on patrol in another police car in the vicinity with Officer-2, and told Officer-1 to follow the Vehicle. Officer-1 remained in radio contact with me and Detective-1. Officer-1 told us that he observed the Vehicle circling the block with its windows open, despite the fact that it was a cold night. Based on our training and experience, it sounded as though the Vehicle was casing the area.

e. A short time later, Detective-1 and I caught up with the Vehicle in the vicinity of 158th Street and Broadway. We observed the Vehicle change lanes without signaling. We then observed the Vehicle make a right turn

2

without signaling, and then another right turn without signaling. We then pulled over the Vehicle. Officer-1 and Officer-2 pulled over in front of the Vehicle.

    f.   I exited my vehicle and approached the driver's side of the Vehicle. Detective-2 approached the rear passenger side, Officer-1 approached the front passenger's side, and Officer-2 approached the rear driver's side. There were four men in the Vehicle: the Driver, BATISTA, a passenger in the back driver's side ("Passenger-1") and a passenger in the back passenger's side ("Passenger-2").

    g.   I spoke with the Driver, who did not have a driver's license but showed me a picture of his driver's license on his phone. Officer-2 put the Driver's name into an NYPD database, which showed that the Driver had an outstanding warrant. I then asked the Driver to step out of the Vehicle and patted him down. I found a bag of marijuana on his person.

    h.   I then asked Passenger-1, in substance, if he had anything on his person. Passenger-1 admitted that he had a knife between his sweatpants and underwear. I took Passenger-1 out of the Vehicle and removed a knife from between his sweatpants and underwear.

    i.   Based on my discussions with Officer-1, I understand that while I was talking to the Driver and Passenger-1, Officer-1 was talking to BATISTA in the front passenger seat. Officer-1 observed BATISTA moving his hands down to his waist and fidgeting with his waistband. Officer-1 asked BATISTA if he had anything on his person and BATISTA said no. After I told Officer-1 that I had found a knife on Passenger-1, Officer-1 again asked BATISTA if he had anything on him, to which BATISTA said something unintelligible. Officer-1 asked BATISTA to exit the Vehicle and then patted down BATISTA. Officer-1 felt the handle of a firearm in BATISTA's front waistband. Officer-1 asked BATISTA what the object was and BATISTA told him it was a BB gun. At this point, I was standing next to Officer-1 and BATISTA, and I observed Officer-1 remove a firearm (the "Firearm") from BATISTA's pants. BATISTA was placed under arrest and taken to the precinct.

    j.   The Firearm was a loaded, silver Phoenix Arms .22 caliber semi-automatic pistol, model HP22A.

    k.   In a later inventory search of the vehicle in which I participated, we recovered from the middle console

approximately fourteen pills which, based on my training and experience, appear to be oxycodone.

4. After his arrest, ESTALIN BATISTA, the defendant, was interviewed by, among others, Detective-1 and Officer-1. The interview was recorded on video. I have spoken to Detective-1 and Officer-1 about the interview. After being read his *Miranda* rights, BATISTA waived those rights and stated, in substance and in part, that he had found the Firearm earlier in the day and had been planning to sell it.

5. Based on information provided to me by a Special Agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives who is familiar with the manufacturing of firearms, I know that the Firearm, and the ammunition inside the Firearm, was manufactured outside New York State.

6. I have reviewed criminal history records pertaining to ESTALIN BATISTA, the defendant, which show that BATISTA was convicted on or about June 22, 2016 in New York County Supreme Court of attempted criminal sale of a controlled substance in the third degree, in violation of New York Penal Law § 220.39, a felony, which is punishable by imprisonment for more than one year; and that he was convicted on or about April 30, 2013 in New York County Supreme Court of criminal sale of a controlled substance in the fifth degree, in violation of New York Penal Law § 220.31, a felony, which is punishable by imprisonment for more than one year.

WHEREFORE, the deponent respectfully requests that a ESTALIN BATISTA, the defendant, be imprisoned or bailed, as the case may be.

Detective Christopher Cruz
New York City Police Department

Sworn to before me this
4th day of March, 2019

THE HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

4